# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| **SAMANTHA BALL,** ) | |
| ) | |
| Plaintiff, ) | Case No. 2:09CV00019 |
| ) | |
| v. ) | **OPINION** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | By: James P. Jones |
| **COMMISSIONER OF** ) | Chief United States District Judge |
| **SOCIAL SECURITY,** ) | |
| ) | |
| Defendant. ) | |

*Lewey K. Lee, Lee & Phipps, P.C., Wise, Virginia, for Plaintiff; Quinn N. Doggett, Assistant Regional Counsel, and Charles Kawas, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I vacate the final decision of the Commissioner and remand for further proceedings.

I

The plaintiff, Samantha Ball, filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying her claims for supplemental security income pursuant to title XVI of the Social Security Act ("Act"), 42 U.S.C.A. §§ 401-433, 1381- 1383(d) (West 2003 & Supp. 2009). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 405(g) and § 1383(c)(3).

Ball filed for benefits in February 2007, alleging disability beginning May 15, 2006, due to anxiety, depression, and pain in her neck, back, hip, and foot. Her claim was denied initially and upon reconsideration. At her request, Ball received a hearing before an administrative law judge ("ALJ"), during which a vocational expert ("VE") and Ball, represented by counsel, testified. The ALJ concluded that Ball was not disabled and denied her claim. After the Social Security Administration Appeals Council denied review, Ball filed her Complaint with this court, objecting to the Commissioner's final decision.

The parties have filed cross motions for summary judgment and have briefed and orally argued the issues. The case is ripe for decision.

II

Ball was twenty-one years old when she filed her disability application, a younger person under the regulations. *See* 20 C.F.R. § 416.963(c) (2009). She completed the ninth grade and worked briefly as a housekeeper in a nursing home.

Ball states that her disability began after a May 2006 car accident. Ball suffered several external and internal injuries, the most serious of which was a right talus bone fracture. Two weeks after the crash, Ball underwent surgery to repair her

right ankle. The surgery was successful and within two months, Ball could bear weight on her foot and she had regained substantial flexibility in the appendage.

Ball has complained of back and neck pain since the accident. Examinations by physicians in 2007 and 2008, which included diagnostic tests such as X rays and an MRI, revealed that Ball suffered from degenerative disc disease at C5-C6, mild scoliosis, and narrowed disc space at L1-L2 due to chronic disc disease. Doctors prescribed Demerol, Lortab, and Flexeril for Ball's pain.

Since the car crash, Ball has complained about depression and anxiety. Ball suffered a miscarriage in April 2007 and in February 2008, shortly after the birth of her second child, Ball states she developed postpartum depression.

Ball sought mental health assistance after her miscarriage. A counselor at the Lee County Behavioral Health Center opined that Ball was depressed and anxious due to the trauma of the automobile accident and the recent miscarriage. Officials at the center provided two counseling sessions for Ball and helped her develop a treatment plan. Ball missed several appointments and her last visit with the Health Center occurred in September 2007.

In June 2007, a state agency psychologist reviewed Ball's claim and found she had no medically determinable mental impairment. The psychologist's finding

included a review of Ball's visits with doctors during 2006 and June 2007, but it did not include Ball's 2007 records from Lee County Behavioral Health Center.

A second state agency psychologist reviewed Ball's file in October 2007 and found that Ball's allegations of depression and anxiety were partially credible. Based upon a review of Ball's claim and recent mental health records from Lee County, the state agency psychologist found Ball suffered from anxiety and depression. The psychologist determined, however, that neither impairment satisfied the diagnostic criteria for anxiety or depression under 20 C.F.R. pt. 404, subpt. P, app. 1, subpts. 12.04 and 12.06 (2009).

In July 2008, at the referral of her attorney, Ball was examined by Robert Spangler, Ed. D., a psychologist. Dr. Spangler interviewed Ball, reviewed her medical records, and administered several tests to Ball. The tests included an intelligence test, a psychological test to assess Ball's neurological functions, and an achievement test that measured Ball's ability to read words, comprehend sentences, and do math problems. Dr. Spangler concluded that Ball had borderline intelligence and marginal academic skills, erratic concentration, moderate to severe depressive disorder, and postpartum depression. Dr. Spangler also concluded that Ball had no ability to understand complex or detailed job instructions.

In August 2008, Ball appeared before the ALJ for a hearing. During the hearing, a VE testified that an individual suffering from limitations and symptoms similar to Ball's could work in jobs that involved light exertion, such as a kitchen helper, or in unskilled clerical jobs, such as a document handler. But, the VE opined that if Dr. Spangler's findings about Ball's abilities were considered in addition to Ball's existing physical and mental evaluations, a hypothetical individual suffering from the same maladies would be precluded from "sustain[ing] gainful competitive employment." (R. at 60.)

The ALJ reviewed the evidence and determined that Ball had severe impairments of depression and cervical degenerative disc disease with neck pain. The ALJ concluded that Ball's ailments did not meet or medically equal one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (2009). Although Ball could not return to her previous job as a housekeeper, the ALJ determined that Ball could perform light work, for which jobs existed in the national economy. The ALJ concluded that Ball was not disabled as defined by the Act.

III

The plaintiff bears the burden of proving that she is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict.

The plaintiff must show that her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A).

In assessing claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to her past relevant work; and (5) if not, whether she could perform other work present in the national economy. *See* 20 C.F.R. § 416.920 (2009). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.*; *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.*

My review is limited to a determination of whether there is substantial evidence to support the Commissioner's final decision and whether the correct legal standard

was applied. 42 U.S.C.A. § 405(g); *see Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This standard "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. It is not the role of this court to substitute its judgment for that of the Commissioner. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Ball argues that the ALJ failed to properly assess the effect of Ball's pain on her ability to work. Ball also asserts that the ALJ erred by failing to give full consideration to the findings of Dr. Spangler, the psychologist who examined Ball. I disagree with Ball's first assertion. But, as to Ball's second argument, I find that the record must be more fully developed before the ALJ can consider Ball's claims of anxiety and depression.

When a claimant alleges disability due to pain, the ALJ must consider whether objective medical evidence demonstrates a medical impairment that "could reasonably be expected to produce the pain or other symptoms alleged." *Craig*, 76 F.3d at 594. If medical evidence meets the first requirement, the ALJ must look at the entire record and evaluate the intensity and persistence of the pain, as well as the extent to which it affects a claimant's ability to work. *Id.* at 595.

The ALJ did not err in determining that Ball's pain was not disabling. The record is devoid of evidence demonstrating that Ball suffers from a medical impairment that could produced her alleged pain. In her claim, Ball alleges she suffers from disabling neck and back pain. An MRI and X rays show that Ball has degenerative disc disease at C5-C6, mild scoliosis, and a narrowed disc space at L1-L2 due to chronic disc disease. This evidence fails to show that Ball suffers from a musculoskeletal impairment that has a disabling impact upon her back or neck. Nor does the evidence show that Ball suffers from a back injury that resulted in a loss of function as required by 20 C.F.R. pt. 404, subpt. P, app. 1, subpt. 1.02 (2009).

As a result of her May 2006 car accident Ball suffered injuries to her ankle, not her back or neck. And, soon after surgery to repair the ankle, Ball regained flexibility and mobility in her right foot. Thus, there is no evidence in the record that could plausibly connect Ball's healed ankle fracture with her alleged back and neck pain.

Therefore, substantial evidence supports the ALJ's conclusion that Ball is not disabled due to pain because Ball does not suffer from a physical impairment of her neck or back that could create the pain she alleges.

Ball's second argument is that the ALJ erred by "failing to give full consideration" to Dr. Spangler's opinions. (Pl.'s Mot. for Summ. J. 5.)

It is the ALJ's responsibility to weigh evidence, including medical evidence, in order to resolve any conflicts which might appear therein. *Hays*, 907 F.2d at 1456. Although an ALJ may not reject medical evidence for no reason or for the wrong reason, an ALJ may assign no or little weight to a medical opinion, even one from a treating source, based upon factors set forth at 20 C.F.R. § 404.1527(d), if she sufficiently explains her rationale and if the record supports her findings. *See King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980).

Based upon a review of the record, I find that substantial evidence does not support the ALJ's decision to reject Spangler's opinion and to give great weight to the opinions of the state agency medical experts.

Ball's initial claim for disability included a claim of disabling anxiety. In July 2007, Ball updated her claim upon appeal to include allegations of depression and post-traumatic stress disorder.

When the first state agency psychologist reviewed Ball's file in June 2007, he concluded Ball's allegations of mental impairment were not credible. His decision was based upon a review of Ball's medical records from 2006 and a single doctor's visit in June 2007, in which the doctor stated that "no evaluation was made pertaining to anxiety." (R. at 225.) The second state agency psychologist reviewed Ball's medical records in October 2007. This review included Ball's medical records from 2006 and 2007 along with records from the Lee County Behavioral Health Center. The second state agency psychologist opined that Ball's claims of depression and anxiety were partially credible.

The ALJ's reliance upon these opinions is erroneous because the opinions were largely based upon a partial review of physician records and a partial review of Ball's mental health records. More importantly, neither state agency psychologist considered the medical records from Ball's miscarriage in April 2007. And, since the psychologists reviewed Ball's file in 2007, neither doctor could consider the psychological effect of the birth of Ball's second child's, which Ball alleges led to postpartum depression in 2008.

The ALJ rejected Dr. Spangler's opinion because "it was not consistent with evidence from treating medical experts." (R. at 18.) Substantial evidence does not exist in the record to support this conclusion. Dr. Spangler's opinion about Ball was

based upon an in-person interview, a review of her medical records, and several intelligence and neurological tests. While Dr. Spangler opined that Ball had moderate to severe depressive disorder, his conclusions were largely based upon Ball's low intelligence and inability to concentrate or focus for prolonged periods. Thus, the basis for Dr. Spangler's opinion differs significantly from the bases for the opinions provided by the state-agency psychologists and Ball's treating physicians. It was erroneous to conclude that Dr. Spangler's opinion was not supported by other medical evidence because no medical sources, other than Dr. Spangler, performed intelligence and neurological tests upon Ball. Except for Dr. Spangler, no evaluator cited in the ALJ's decision evaluated Ball, or her medical records, after her April 2007 miscarriage and the birth of her second child.

Further, the ALJ failed to evaluate the considerable amount of time that lapsed between the review of Ball's records by the state agency psychologists and Dr. Spangler's examination. The psychologists reviewed Ball's file in June and October of 2007. Dr. Spangler, on the other hand, interviewed Ball and reviewed Ball's medical records in July 2008, a month before Ball appeared before the ALJ.

For the ALJ to properly assess Ball's claims of depression and anxiety a current psychological evaluation is appropriate. Upon remand, the ALJ shall provide Ball an independent evaluation of her claimed mental health impairment.

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the Commissioner's Motion for Summary Judgment will be denied. The decision of the Commissioner denying benefits will be vacated and the case will be remanded to the Commissioner for further proceedings consistent with this Opinion.

DATED: March 9, 2010

/S/ JAMES P. JONES
Chief United States District Judge